**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARMEN MARIE MCCAULEY,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:13-CV-1065** |
| | : | |
| **v.** | : | **(KOSIK, J.)** |
| | : | **(SCHWAB, M.J.)** |
| **CAROLYN W. COLVIN,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

### I.    PROCEDURAL HISTORY

Plaintiff, Carmen McCauley, appeals from an adverse decision denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the Act).  Jurisdiction is conferred upon this Court pursuant to 42 U.S.C. §405(g).  For the reasons stated herein, I recommend that the decision of the Commissioner be **VACATED** and **REMANDED** for further proceedings.

On April 28, 2010, Plaintiff protectively filed an application for DIB and under Title II of the Act alleging that she was unable to work due to Reflex Sympathetic Dystrophy Syndrome (RSDS) / Complex Regional Pain Syndrome (CRPS), and depression beginning August 13, 2009.  *Tr.*149-50, 171.[1]  On

---

[1] "*Tr.*" Refers to the transcript from the Social Security Administration and appears as Document 6 and its attachments on the ECF docket report. The pinpoint

September 15, 2010, Plaintiff's application was initially denied.  *Tr.* 88-92.

Thereafter, Plaintiff filed a written request for an administrative hearing.  *Tr.* 93-94.  On October 25, 2011, Plaintiff, her husband David McCauley, and Impartial

Vocational Expert (VE) Terry P. Leslie, appeared and testified before

Administrative Law Judge (ALJ) Randy Riley in Harrisburg, Pennsylvania.  *Tr.*

30-77.  Medical expert Dr. Jack Lebeau testified at the hearing via telephone.  *Id.*

On November 10, 2011, the ALJ denied Plaintiff's application for benefits in a

written decision.  *Tr.* 16-25.  Plaintiff sought, and was denied review by the

Appeals Council, making the ALJ's decision of November 10, 2011, the final

decision of the Commissioner subject to judicial review.  *See* 20 C.F.R. §404.981;

*Tr.* 1-5.

On April 23, 2013, Plaintiff filed a complaint in this court.  *Doc.* 1.  On June

28, 2013, the Commissioner filed an answer; she filed the administrative record on

the following day.  *Docs.* 5, 6.  On August 13, 2013, Plaintiff filed her supporting

brief.  *Doc.* 9.  After being granted an extension of time, the Commissioner filed

---

citations to the transcript refer to the Bates-stamped number in the bottom right-hand corner of each page.

her brief on November 25, 2013.  *Doc.* 14.  On December 9, 2013, the Plaintiff

filed a reply.  *Doc.* 15.  The appeal is now ripe for disposition.[2]

## II.     SUMMARY OF THE ADMINISTRATIVE DECISION

To receive benefits under Title II of the Act, a claimant must demonstrate an

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not

less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

Furthermore:

> [a]n individual shall be determined to be under a disability only if
> [her] physical or mental impairment or impairments are of such
> severity that [she] is not only unable to do [her] previous work but
> cannot, considering [her] age, education, and work experience, engage
> in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the
> immediate area in which [she] lives, or whether a specific job vacancy
> exists for [her], or whether [she] would be hired if [she] applied for
> work.  For purposes of the preceding sentence (with respect to any
> individual), "work which exists in the national economy" means work
> which exists in significant numbers either in the region where such
> individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).  In addition to the above-listed requirements, under Title

II of the Act, a claimant must show that he or she contributed to the insurance

---

[2] Under the Local Rules of Court, "[a] civil action brought to review a decision of
the Social Security Administration denying a claim for social security disability
benefits" is "adjudicated as an appeal."  L.R. 83.40.1.

program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

It is the responsibility of the ALJ to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). As part of this analysis the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520. If the ALJ finds that a claimant is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. § 404.1520(a)(4). Moreover, between steps three and four of this process, the ALJ must determine the claimant's residual functional capacity (RFC) as defined by 20 C.F.R. § 404.1545. 20 C.F.R. § 404.1520(e).

The claimant bears the initial burden of demonstrating that he or she has a medically determinable impairment that prevents him or her from engaging in past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512. Once the claimant

has satisfied her burden at steps one through four, it is incumbent upon the ALJ to show that jobs exist in the national economy that the claimant could perform that are consistent with his or her age, education, work experience, and RFC.  20 C.F.R. § 404.1512.

Plaintiff was born on May 29, 1972, and was 37 years old on her alleged onset date.  *Tr.* 33.  The ALJ classified her as a "younger person" under the Social Security regulations; therefore her age was considered to present little or no barrier to her adjustment to alternative employment.  *See* 20 C.F.R. § 404.1563; *Tr.* 24. The ALJ also found that the Plaintiff attained an associate's degree in nursing after completing high school, and was able to communicate in English.  *See* 20 C.F.R. §§404.1563(c), 404.1564(b); *Tr.* 24.

In his decision, the ALJ completed steps one through five of the five-step sequential evaluation process.   He found that Plaintiff met the insured status requirements of the Act through December 31, 2014, *Tr.* 18, but concluded that Plaintiff was not under a disability, as defined by the Act, at any time from Plaintiff's alleged onset date of August 13, 2009, through November 10, 2011, the date of his decision.  *Tr.* 25.

At step one of his analysis, the ALJ found that Plaintiff had not engaged in any substantial gainful activity from her alleged onset date of August 13, 2009, though the date of her decision.  *Tr.* 18.  At step two of his analysis, the ALJ found,

based on testimony by Dr. Lebeau, that Plaintiff had the severe impairment of "right lower extremity pain;" but did not address the etiology of this impairment beyond concluding that it was not due to RSDS/CRPS. *Id.* At step three of his analysis, again relying on the testimony of Dr. Lebeau, the ALJ found that Plaintiff's right lower extremity pain did not meet or medically equal the severity of any listed impairments in 20 C.F.R. Pt. 404, Subpt. P, Appx 1. *Tr.* 19.

Before beginning step four, the ALJ found that Plaintiff had the requisite RFC to perform less than a full range of sedentary work as defined by 20 C.F.R. §404.1567(a) subject to the following additional limitations:

> The [Plaintiff] needs the opportunity to alternate sitting and standing at will. The [Plaintiff] is never able to use her right leg for foot controls. She is able to occasionally use stairs, ladders, balance, and stoop, kneel, crouch, and crawl.

*Tr.* 19-24.

At step four of his analysis, the ALJ found, based on testimony by a VE, that Plaintiff could no longer perform her past relevant employment as registered nurse. *Tr.* 24. At step five of his analysis, the ALJ found, also based on testimony by a VE, that considering the Plaintiff's age, education, work experience, and RFC, a significant number of jobs existed in the national economy that he could perform. *Tr.* 24-25. At the administrative hearing, the VE identified three representative jobs: nurse consultant (DOT 075.127-014), a skilled sedentary occupation with 350 positions regionally and 650,000 positions nationally; receptionist/information

clerk (DOT 237.367-018), an unskilled occupation with 1000 positions regionally, and 1.2 million positions nationally. *Tr.* 73-74. In his decision, the ALJ only identified the position of receptionist information clerk. *Tr.* 25.

## III.   FACTUAL BACKGROUND

During the relevant period, Plaintiff lived in a multiple-story house with her husband. *Tr.* 33, 184. Both Plaintiff and her husband are registered nurses. Plaintiff stopped working in 2009 due to her impairment, her husband, however testified that he continued to work at the Fulton County Medical Center Emergency Department and the Parkway Neuroscience and Spine Institute. *Tr.* 67. In fact, as of the date of the hearing, Plaintiff's husband worked at the same facility as the Plaintiff's treating anesthesiologist, Dr. Larkin. *Id.*

Plaintiff testified that she was most comfortable lying down. *Tr.* 44. She was able to walk a maximum of two blocks at one time. *Tr.* 38-39. She testified that she could sit for up to one hour, and stand between fifteen and thirty minutes at one time. *Id.* Plaintiff also reported that the restrictions on her abilities to walk, sit, and stand due to her impairment varied from day to day. In a function report form, Plaintiff stated that her impairment affects her abilities to lift, squat, stand, walk, sit, kneel, climb stairs, remember, complete tasks, and concentrate. *Tr.* 189. She reported that she occasionally used crutches to ambulate. *Tr.* 190.

With respect to her activities of daily living, Plaintiff's testimony reveals that she relies heavily upon her husband to perform the majority of household tasks. *Tr.* 186. She reported that her husband cooks, goes grocery shopping, does the laundry, takes out the trash, and cares for their yard. *Tr.* 35-36. Plaintiff testified that she is able to perform her personal care tasks, let the dogs out, sweep the floors, and do dishes on her "good days." *Id; Tr.* 185-86. Plaintiff does have a driver's license, but testified that she drives rarely and with great difficulty. *Id.*

Plaintiff fractured her right femur in 1999, and began reporting right leg pain in August 2009. *Tr.* 231, 485. In a Supplemental Function Questionnaire, Plaintiff reported that she experiences variable "electrical shock" pains in her right leg, and that the intensity of her pain was affected by the time of year, *Tr.* 193, in addition to other symptoms including: involuntary muscle movements during episodes of "shocking" pains; the appearance of "gooseflesh" on her skin without any change in temperature; and, periodic sweating which occurred only in her legs (bilaterally). *Tr.* 45. These symptoms were corroborated by her husband, and by her treating anesthesiologist, Dr. Larkin in his medical source statement. During the hearing, Plaintiff propped up her right leg on a chair; she later testified that elevating her leg reduces her pain. *Tr.* 43. Plaintiff also reported that she takes Lyrica and Topamax for her impairment, but that her medications caused extreme drowsiness and impaired her ability to concentrate. *Tr.* 42, 185-86.

On September 8, 2010, state agency medical reviewer Vrajlal Popat, M.D. reported that the medical evidence established a medically determinable impairment of RSDS. *Tr.* 447. Dr. Popat opined that Plaintiff could: stand at least two hours per eight-hour workday, and must periodically alternate between sitting and standing to relieve pain and discomfort during normal break periods; occasionally lift or carry ten pounds, and frequently lift or carry slightly less than that amount; occasionally balance, stoop, kneel, crouch, crawl, or climb ramps, stairs, ladders, ropes, and scaffolds. *Tr.* 442-48.

On March 24, 2011, Plaintiff's treating anesthesiologist, Dr. Larkin,[3] completed a RSDS/CRPS Medical Source Statement. *Tr.* 457-60. Dr. Larkin reported that Plaintiff had been his patient for eight months, and that he examined Plaintiff monthly. *Id.* Dr. Larkin also noted that, based on the clinically documented signs of decreased/increased sweating, gooseflesh, and involuntary muscle movements, he diagnosed Plaintiff with RSDS. *Id.* Dr. Larkin opined that Plaintiff could: sit for one hour at a time for a total of two hours per workday; stand for up to 5 minutes at one time for a total of less than one hour per workday; occasionally lift or carry up to twenty pounds; occasionally twist or stoop; and, never bend. *Id.* Dr. Larkin also opined that Plaintiff was in constant pain, must be

---

[3] Dr. Larkin is a board certified Anesthesiologist with added qualifications in pain management, and has experience dealing with RSDS/CRPS patients. *Tr.* 490-91. Plaintiff's husband testified that Dr. Larkin worked almost exclusively with RSDS/CRPS patients. *Tr.* 68.

permitted to shift positions at will, would need to take frequent unscheduled one to two hour breaks to alleviate her pain, and needed to elevate her leg with any prolonged sitting for an estimated 90% of an eight-hour workday. *Id.*

Dr. Lebeau[4] expressed some doubts as to the validity of Plaintiff's RSDS/CRPS diagnosis. He testified that the most striking observable symptom of RSDS/CRPS is the appearance of "thin and shiny" skin on the affected area, which usually develops within three months of the onset of the condition, and that this symptom was completely absent from Plaintiff's medical records. *Tr.* 52. Dr. Lebeau also noted that Plaintiff never underwent a radionuclide scan of both extremities to confirm the diagnosis of RSDS/CRPS. *Tr.* 58-60. Dr. Lebeau did, however, recognize that Plaintiff's medical records contained the diagnosis of RDSD/CRPS, and that Plaintiff had received some of the classic treatments for the condition, but did not concur in the diagnosis of RSDS/CRPS. *Tr.* 57, 60-61.

## IV.   DISCUSSION

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this court.

---

[4] Dr. Lebeau is board certified in the areas of internal medicine, cardiology, and geriatrics. *Tr.* 46. Dr. Lebeau reported that, on average, he examines two RSDS/CRPS patients per year. *Tr.* 51. Dr. Lebeau testified that doctors who specialize in orthopedics, neurology, anesthesiology, or podiatry generally see the most RSDS/CRPS patients. *Tr.* 52. Dr. Lebeau stated that he was unfamiliar with SSR 03-2p governing the evaluation of RSDS/CRPS by the Social Security Administration. *Tr.* 53-54.

"With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is 'supported by substantial evidence.'" *Hansford v. Astrue*, 805 F.Supp.2d 140, 143 (W.D.Pa. 2011)(*citing Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).  "The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record." *Id.* (citation omitted).  Rather, the Court must review the findings of fact and conclusions of the ALJ to determine whether they are supported by substantial evidence.  If the ALJ's findings of fact are supported by substantial evidence, they shall be conclusive.  42 U.S.C. §405(g).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.*"  Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008).  It is less than a preponderance of the evidence but more than a mere scintilla.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "A single piece of evidence is not substantial evidence if the [ALJ] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993)(*quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).   In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the

11

evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966). Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

In her brief, Plaintiff contends that the ALJ's decision is unsupported by substantial evidence for several reasons. The first two arguments asserted by Plaintiff are intertwined. First, Plaintiff alleges that the ALJ erred at step two when he found Plaintiff's RSDS/CRPS to be non-medically determinable. In her second argument, the Plaintiff alleges that the ALJ improperly discounted the medical opinion of her treating anesthesiologist, in part, due to the ALJ's error at step two. The Commissioner contends that: the ALJ did not commit reversible error at step two; and, that the ALJ's decision to discount Dr. Larkin's medical opinion was supported by substantial evidence.[5]

_____

[5] The Commissioner asserts that the ALJ discounted Dr. Larkin's opinion and afforded it only limited weight because: (1) the opinion was not well-supported by Dr. Larkin's own objective examination findings; (2) the opinion was inconsistent with and not well-supported by the weight of the overall objective medical evidence of record; (3) the opinion was rendered on a check-box form; (4) the opinion was inconsistent with the conclusions of Dr. Popat; and, (5) because Plaintiff's husband worked with Dr. Larkin, which raised the issue of a possible conflict. *Doc.* 14, p. 22-23. Several of the above-cited rationales were not expressly cited by the ALJ in his decision. It is the responsibility of the ALJ to

12

Plaintiff alleges that the ALJ erred in finding that she had no medically determinable impairment due to RSDS/CRPS.  In this case, Plaintiff contends the ALJ's failure to find her impairment of RSDS/CRPS medically determinable at step two altered the ALJ's evaluation of Dr. Larkin's opinion, which in turn impacted the ALJ's RFC assessment.

In this case, recognizing that at step two of the sequential evaluation process, the ALJ considers whether the Plaintiff's impairment is (1) medically determinable or non-medically determinable, and (2) severe or non-severe – with a non-severe impairment being a "slight abnormality...that has no more than a minimal effect on the [Plaintiff's] ability to do basic work activities," 20 C.F.R. §404.1521, the ALJ found that Plaintiff had the medically determinable severe impairment of "right lower extremity pain;" he did not, however address the etiology of Plaintiff's pain.  Instead, the ALJ found that RSDS/CRPS was not a medically determinable

---

explain the basis for his or her decision *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121-22 (3d Cir. 2000), and any analysis later provided by the Commissioner cannot cure that which is absent.  *Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000)("The ALJ's decision must stand or fall with the reasons set forth in [his or her] decision"); *Campbell v. Colvin*, No. 1:12-CV-1968, 2014 WL 257356, at *9 (M.D.Pa. Jan 23, 2014)(Caldwell, J.)(noting that it is the role of this Court to review the ALJ's decision, not the post-hoc rationalizations raised by the Commissioner in her brief).  Thus, I will confine my review of the Commissioner's arguments to those relied upon by the ALJ in his decision.

impairment pursuant to the testimony of non-examining medical expert, Dr. Jack Lebeau and the medical evidence of record. *Tr.* 18.

The evaluation of disability claims involving RSDS/CRPS is particularly difficult, as its pathogenesis is not entirely understood.[6]   As a result, the Commissioner published Social Security Ruling 03-2p to explain the policies of the Social Security Administration for developing and evaluating claims for disability on the basis of RSDS/CRPS.   SSR 03-2p.   Pursuant to SSR 03-2p, RSDS/CRPS can be established as a medically determinable impairment in the presence of persistent complaints of pain that are typically out of proportion to the severity of any documented precipitating injury, and one or more of the following clinically documented signs in the affected region at any time following the documented precipitant: swelling, autonomic instability (i.e. changes in skin color or texture, decreased or increased sweating, changes in skin temperature, or gooseflesh), abnormal hair or nail growth, osteoporosis, or involuntary movements of the affected region of the initial injury.   *Id.*   Moreover, "[c]onflicting medical evidence is not unusual in cases of RSDS due to the transitory nature of its objective findings and the complicated diagnostic process involved."   *Id.*

---

[6] RSDS/CRPS is a chronic pain syndrome that may occur following an injury to bone or soft tissue, such as a fracture.   SSR 03-2p.   The precipitating injury may be so minor that the claimant did not even recall sustaining an injury. *Id.*

The Court's review of the administrative record reveals persistent complaints of pain in Plaintiff's right lower extremity that her treating physicians characterized as being out of proportion to the severity of any documented precipitant. *Tr.* 278-79, 374, 457. Plaintiff also complained of increased sweating in her lower extremities (bilateral), *Tr.* 424, 475, 482. Plaintiff and her husband both testified that she experienced gooseflesh and involuntary muscle movements, *Tr.* 45, 69, and in his medical source statement, Dr. Larkin opined that Plaintiff had decreased or increased sweating, abnormal gooseflesh, and involuntary muscle movements in the affected region. *Tr.* 457. It is unclear from Dr. Larkin's treatment notes, however, whether he observed these symptoms in a clinical setting. Thus, there was some evidence to support a medically determinable impairment of RSDS/CRPS as defined by SSR 03-2p, which was then contradicted by Dr. Lebeau's testimony. According to the ALJ, Dr. Larkin's opinion was suspect because "the claimant's husband work[ed] with Dr. Larkin, which could present a conflict," and because several symptoms of RSDS/CRPS were absent from Plaintiff's other medical records. *Tr.* 23.

When evaluating opinions by a treating source, it is well-established that "a cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation over a prolonged period

of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)(*quotations omitted*).

This preference for opinions by treating sources is manifest in the Social Security

regulations, which provide that:

> if [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case  record, [the ALJ] will give it controlling weight.

 20 C.F.R. § 404.1527; *see also* SSR 96-2p.

Finding that the medical opinion of a treating source is not entitled to

controlling weight does not mean the opinion should be rejected.  SSR 96-2p.  In

many cases, a treating source's non-controlling medical opinion will be entitled to

great deference.  *Id.*  Where no medical opinion is entitled to controlling weight

under the Social Security regulations, the probative weight of all non-controlling

opinions by treating sources, nontreating sources, and nonexamining sources is

evaluated based on several factors.   Pursuant to 20 C.F.R.  §  404.1527, non-

controlling medical opinions must be weighed based on: (1) the length of treatment

and  frequency  of  examination;  (2)  the  nature  and  extent  of  the  treatment

relationship;  (3)  the  opinion's  support  by  medical  evidence;  (4)  the  opinion's

consistency  with  the  record  as  a  whole;  and  (5)  the  treating  physician's

specialization.  In addition, the ALJ must consider any other factors that tend to

support or contradict the opinion, but only if brought to his or her attention.  20 C.F.R. § 404.1527.

The opinions of nonexamining program physicians, like Dr. Lebeau, can be given weight insofar as they are supported by evidence in the case record.  SSR 96-6p.  "In appropriate circumstances, state agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."  *Id.*  In *Morales*, the Court of Appeals for the Third Circuit set forth the standard for weighing opinions by treating, nontreating, and nonexamining physicians, stating that:

> Where...the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason."  *Plummer*[ *v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999)] (*citing Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled.  *See Adorno[v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)].  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.  *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988); *Kent*, 710 F.2d at 115.

225 F.3d at 317-318.

As discussed above, the ALJ discounted Dr. Larkin's medical opinion that Plaintiff suffered from the medically determinable impairment of RSDS/CRPS which rendered her unable to perform less than a full range of sedentary work on a regular and continuing basis, in large part because there were "missing symptoms in the other medical records." *Tr.* 23.  The ALJ fails, however, to explain which symptoms are "missing" and which are present, as SSR 03-2p does not require that a claimant exhibit *all* of the symptoms of RSDS/CRPS in order to establish its existence as a medically determinable impairment.  As a result, this Court is unable to make any meaningful assessment as to whether the ALJ's decision to discount Dr. Larkin's opinion and findings at step two were supported by substantial evidence.  Thus, I find that the ALJ's failure to give an adequate explanation for discounting Dr. Larkin's recitation of Plaintiff's symptoms and diagnosis of RSDS/CRPS, which is both consistent with Plaintiff and her husband's testimony, and probative evidence that supports Plaintiff's claim, was error. *See Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)("an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.").  Accordingly, because this error renders the ALJ's decision at step two and RFC assessment suspect, I recommend that this case be remanded for further proceedings.

Because I recommend that this case be remanded for further proceedings, I find that it is unnecessary to address Plaintiff's remaining contention that the VE's testimony with respect to the position of Receptionist Information Clerk was inconsistent with the DOT.  This deficiency, if it exists, can be remedied in a future decision.

## V.    RECOMMENDATION

Based upon the foregoing, it is respectfully recommended that the final decision of the Commissioner denying Plaintiff's Title II application for benefits be **VACATED**, and this case be **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. §405(g).

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own

determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely Objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this 15th day of August 2014.

**_S/Susan E.  Schwab_**
Susan E. Schwab
United States Magistrate Judge
